UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Edward Hayes,               :   Case No. 1:10-cv-178
                            :
    Plaintiff,              :
                            :
vs.                         :
                            :
Michael Astrue, Commissioner of  :
Social Security,            :
                            :
    Defendant.              :

**ORDER**

Before the Court are Plaintiff's objections to the Report and Recommendation of the Magistrate Judge.  (Doc. 12)  Plaintiff objects to the Magistrate Judge's recommendation to affirm the Commissioner's denial of disability benefits to Plaintiff.  (See Doc. 11, Report and Recommendation)  For the following reasons, the Court accepts the Magistrate Judge's recommendation.

**FACTUAL BACKGROUND**

The Magistrate Judge's Report accurately describes the history of Plaintiff's application for benefits, and recites the relevant facts gleaned from the medical record.  Briefly summarized, Plaintiff Edward Hayes, who is now 42 years old, alleges that he became disabled on March 26, 2006 when he was seriously injured in an accident.  As described in the hospital discharge summary, Hayes was pinned between two cars when he attempted to get out of his car and it began to move.  He tried

to stop the car but got wedged between the bumpers of the two cars. He sustained left femur and tibial plateau fractures. Hayes underwent reduction and fixation surgery, with plates and rods installed in his left leg. (Doc. 4-7, pp. 2-3) After two periods of inpatient hospitalization in March and April, and another surgical manipulation of his left knee in October 2006, Hayes was moved to a nursing home for extensive rehabilitation therapy. Hayes was in a wheelchair for several months after the accident, and began a physical therapy program after his knee manipulation procedure. His disability application states that he stopped working in November 2005 because no work was available, and not for reasons having to do with his medical condition. (Doc. 4-6 at p. 6)

Hayes submitted a December 26, 2006 disability update report, which stated that his condition had changed "for the better - receives aggressive ROM to bilateral knees since 10/30/06." He indicated that he participated in that therapy when he could, and that he was "ambulating independently (sometimes with cane)." (Doc. 4-6 at p. 40) Hayes also described himself as being independent with his daily living activities, and again noted that he could ambulate independently. (Id. at p. 43) He was discharged from the nursing home on April 3, 2007, and went to live with relatives. The discharge summary recommended that Hayes engage in "daily active participation in

interests and activities."  (Doc. 4-8 at p. 6)

In July 2007, he went to the emergency room after he fell while going down some stairs at his niece's house.  An orthopedic clinic note dated August 29, 2007 states that the injury occurred while Hayes was running, and he tripped on the stairs.  (Doc. 4-7 at p. 201)  The x-rays taken at that time confirmed that he had sustained a nondisplaced ulnar (arm) fracture, and he was put in a splint.  He also complained of left knee pain, and x-rays of his knee documented some joint effusion, but no instability or re-injury of his leg fractures.

After his application for benefits was denied, Hayes requested en evidentiary hearing which the ALJ conducted on July 29, 2008.  Hayes and his niece, Ms. Ward, testified about his restrictions.  Hayes testified that he relied on Ward to help him with household chores, and to drive him to the grocery store.  He stated that he sits and watches television most of the day, and props his legs up for about five out of eight hours.  Hayes also complained of back pain as a result of the accident, and said he could not lift more than eight pounds.  He testified that the medication he takes affects his concentration, and that he can't focus due to pain.  He also stated that he began suffering anxiety attacks about five months before the hearing, which he attributed to depression and flashbacks of the accident.  Ms. Ward confirmed that she helps Hayes with laundry and chores, and

takes him shopping.  She also believes that Hayes' medications seem to affect his comprehension.

A vocational specialist testified that Hayes' past work was largely unskilled and varied in exertional levels.  The ALJ then posed a hypothetical question that included all of Hayes' complaints and descriptions about his limitations; the VE responded that those restrictions would preclude employment.  The VE was then asked about available jobs if Hayes could only stand/walk for one to two hours a day, with further limitations of work limited to simple routine repetitive tasks, free of fast-paced production requirements, and involving only simple work related decisions with few if any workplace changes.  The VE said the full range of sedentary unskilled jobs would be available, identifying as examples of such jobs assembler (460 jobs locally, 57,000 nationally); testers or inspectors (100 locally, 15,000 nationally); or surveillance system monitors (150 locally, 25,000 nationally).  Her answer did not change with the further limitation of standing and walking for a total of one hour per day.

The ALJ's written decision found that Evans was not disabled.  The first three steps of the sequential evaluation process performed by the ALJ are not in dispute.  Evans meets the insured status requirements; he has not engaged in substantial gainful activity since his injury; and he has severe impairments

-4-

of pain associated with recently healed bilateral plateau fractures and left femur fracture status post surgery. At steps four and five, the ALJ found that Hayes' impairments did not meet or equal the Listings, and that he was limited to sedentary work with restrictions that he could stand and walk only one to two hours during an eight-hour day. (Doc. 4-2 at p. 15) The ALJ reviewed the medical evidence that documented Hayes' ability to ambulate "without assistance" by late 2006. The ALJ recognized that Hayes relies on his niece to drive him to the store. But Hayes' driver's license had been suspended for many years before his accident, and the need to have someone drive him places was not related to his injuries. The ALJ rejected Hayes' own subjective descriptions of his limitations, including propping his leg up for many hours a day, his back pain, and his depression and anxiety, noting that there was no medical evidence or opinion from a treating physician documenting these complaints.

The Appeals Council denied Hayes' request for review, and he thereafter filed the complaint in this Court.

## DISCUSSION

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of

evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of some fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a magistrate judge's report and recommendation regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

In his objections, Hayes argues that the ALJ erred in

-6-

finding that his impairments do not meet or exceed Listing 1.02 or 1.06; in failing to fully assess whether his femur fracture healed properly, and to seek additional expert opinion on that issue; and by improperly assessing his residual functional capacity.

Hayes contends he qualifies for benefits under Listing 1.02A or Listing 1.06. Listing 1.02A covers a "major dysfunction" of a joint, defined as gross anatomical deformity and chronic joint pain and stiffness, with limitation of motion and involvement of a major weight-bearing joint (such as a knee) "resulting in inability to ambulate effectively." Listing 1.06 covers fractures of the femur, tibia, pelvis, or tarsal bones, with two clinical findings: (A) a solid union is not evident on imaging; and (B) an inability to ambulate effectively, and a return to ambulation either did not occur or is not expected to occur within 2 months of onset.

Although the ALJ referred to Hayes' femur fracture as "healed," there is no real dispute that the most recent radiography images in the record establish that Hayes' femur fracture did not achieve a "solid union" after the surgeries. To qualify under either of the Listings, however, Hayes must also demonstrate an "inability to ambulate effectively." An "inability to ambulate effectively" is defined as an "extreme limitation of the ability to walk, that interferes very seriously

-7-

with a claimant's ability to independently initiate, sustain or complete activities." The same regulatory definition also provides that "ineffective" ambulation is generally found when lower extremity function is so limited that use of a hand held assistive device is needed, which in turn limits functioning of both upper extremities. (See 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.00(B)(2)(b), cited in the Report and Recommendation at p. 8)

The ALJ found that "effective ambulation" was restored to Hayes within 12 months of his surgery. He also noted that no treating or examining physician had found that Hayes' clinical findings were equal in severity to the Listing criteria. These conclusions are not clearly erroneous. As the ALJ cited in his decision, treatment notes from Ivy Woods demonstrate Hayes' continual progress in his ability to ambulate from May to October 2006. After the October 2006 followup surgical manipulation of his knee, his doctor stated that Hayes was released to ambulate immediately. (Doc. 4-7 at p. 198) By October 13, 2006, Hayes was ambulating without assistance. The patient note dated 12/22/06 states that Hayes reported no problems other than some swelling in his left knee, and that he was unable to stand for long periods. (Doc. 4-8, p. 23) Hayes' own disability report submitted a few days later states that he was able to ambulate independently, although he sometimes preferred to use a cane.

Hayes did not submit a statement or assessment from any of his treating or consulting physicians that these observations and statements are incorrect, or that his limitations fall within either of the identified Listings. And Hayes' testimony that he sits and sleeps with his leg elevated is not supported by any medical evidence documenting a clinical need for this elevation.

Hayes also argues that the ALJ should have sought additional evidence or medical opinion on the question of whether his femur fracture had completely healed, in the sense that it achieved a "solid union" as Listing 1.06 provides. The Court assumes that the fracture had not achieved a solid union, as demonstrated by the July 12, 2007 radiology report noting a "nonunited distal femur fracture stabilized by intermedullary rod and screws." (Doc. 4-7, p. 212) The ALJ's failure to obtain additional evidence or clarification about the status of the fracture is harmless in view of the substantial evidence supporting the conclusion that Hayes was able to ambulate effectively.

Finally, Hayes objects to the ALJ's formulation of his RFC. He relies almost entirely upon his own testimony that he must frequently alternate between sitting and standing, and that he elevates his feet up to five hours per day. The vocational expert testified that these limitations effectively precluded employment, and Hayes contends that the ALJ should have accepted that opinion. The ALJ noted that Hayes' subjective complaints

-9-

conflicted with the medical evidence and with his own previous descriptions of his abilities and limitations contained in the record.  Similarly, his statements about depression and anxiety lack any medical or psychological support.  The nursing home records consistently note the absence of any factors suggesting depression, and no episodes of anxiety are recorded.  His two emergency room visits in December 2007, in which he complained of anxiety, are not sufficient to establish that he suffers from disabling anxiety or depression.  At least one of those visits also involved his admission that he took prescription medication that was not his own, but had been prescribed for a friend. (Doc. 4-7 at p. 230)

    The ALJ is not required to accept the testimony of a claimant that conflicts with the evidence in the record, and is not supported by any opinion or clinical assessment from a treating physician.  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ's assessment, if properly explained and supported by substantial evidence, is entitled to deference from this Court.  This Court agrees with the Magistrate Judge's conclusion that the ALJ's assessment of Hayes' residual function capacity is supported by substantial evidence in the record.

**CONCLUSION**

For all of the foregoing reasons, the Court overrules Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. The Court has reviewed the record de novo, and hereby adopts the Magistrate Judge's Report and Recommendation in full.

The Court affirms the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 15, 2011          s/Sandra S. Beckwith
                               Sandra S. Beckwith
                               Senior United States District Judge